*1163
 
 OPINION
 

 Per Curiam:
 

 In November 1989, appellant Annette Allgood fell on an external stairway at the office building where she worked and was injured. Appellants Judy and David Coblentz owned this building. Respondent Hotel Employees & Restaurant Employees Inter
 
 *1164
 
 national Union Welfare Fund (the Fund) leased the office space in the building from the Coblentzes at that time, and American Benefits Plan Administrators (ABPA) subleased the space from the Fund. ABPA occupied the premises at the time of the accident and performed administrative services for the Fund. Allgood sued the Coblentzes, the Fund, and ABPA, but ABPA was later dismissed from the action.
 

 The lease agreement between the Coblentzes and the Fund required the Coblentzes to maintain the stairway. It also required the Fund to name the Coblentzes as insureds on its liability insurance policy, which the Fund failed to do. The Coblentzes filed a cross-claim against the Fund. The dispute was submitted to arbitration, and the arbitrators ruled for the Fund. The district court confirmed the arbitration award and eventually dismissed the Coblentzes’ cross-claim and granted summary judgment for the Fund against Allgood.
 

 We conclude that the district court erred in dismissing the Coblentzes’ cross-claim but properly granted summary judgment against Allgood.
 

 FACTS
 

 On November 17, 1989, appellant Allgood fell on an external stairway at the office building where she worked. The heel of her shoe got stuck in a crack in a concrete step, causing her to fall and sustain injuries. Appellants Coblentzes owned this building. Respondent Fund leased the office space in the building from the Coblentzes at that time, and ABPA subleased the space from the Fund and occupied the premises at the time of the accident. Allgood sued the Coblentzes, the Fund, and ABPA. The parties later stipulated to dismissal of the cause of action as to ABPA.
 

 The Fund retained ABPA to perform certain administrative services for it. An affidavit filed by the Fund’s counsel with the district court stated: the Fund is a multi-employer employee welfare benefit plan governed by ERISA; ABPA contracted with the Fund to maintain lists of eligible participants and to receive and process claims; and ABPA is an independent contractor, not an agent of the Fund.
 

 The Coblentzes and the Fund were successors in interest to a lease agreement, which set forth their respective obligations as landlord and tenant. The agreement required the tenant to maintain the interior of the premises and the landlord to maintain the exterior of the building and common areas such as stairways, elevators, sidewalks, and parking areas. The landlord retained the right to control access to sidewalks, lobbies, passages, elevators and stairways.
 

 Section 11(b) of the lease agreement stated:
 

 
 *1165
 
 The Tenant shall maintain throughout the Term, at the Tenant’s expense, insurance against loss or liability in connection with bodily injury, death, property damage and destruction in or upon the Premises or the remainder of the Property, and arising out of the use of all or any portion of the same by the Tenant or its agents, employees, officers, invitees, visitors and guests, under policies of general public liability insurance having [certain limits]. Such policies shall name the Landlord and the Tenant... as the insured parties
 

 Section 14 stated:
 

 (a) The Landlord shall not be liable for any damage or injury to any person or property of the Tenant, of the Tenant’s employees, agents, guests or invitees or of any other person, by reason of the Tenant’s occupancy or use of the Premises or of the remainder of the Property, or because of fire, flood, windstorm, acts of God or any other cause.
 

 (b) The Tenant shall be responsible for, and shall indemnify and hold harmless the Landlord against and from, any and all liability arising out of any injury or damage to the Tenant or any other person, or to any property, either (i) upon the Premises, or (ii) elsewhere upon the Tract (if such injury or damage shall occur elsewhere upon the Tract in the course of the use thereof by the Tenant), caused by any fire, breakage, leakage, collapse or other event, caused by or resulting from the negligent or intentionally tortious act or omission of the Tenant or its agents, officers, invitees, visitors or guests, or from the Tenant’s breach of any covenant herein.
 

 The Fund failed to name the Coblentzes as insureds on its liability insurance policy. The Coblentzes tendered their defense of Allgood’s suit to the Fund, which refused to accept it. The Coblentzes filed a cross-claim against the Fund, alleging that the Fund had breached the lease agreement by failing to name them as insureds. They sought indemnification and/or contribution from the Fund. The Coblentzes and the Fund agreed to arbitrate the issue of their liability to Allgood. The arbitration agreement provided that the arbitration was to be conducted according to Nevada law and that any appeal from the decision was to be pursued under NRS Chapter 38. Absent an appeal, the arbitrators’ decision was to be binding.
 

 Evidence was presented to two arbitrators, who ruled in favor of the Fund on February 28, 1994. Employing the language of the lease, the arbitrators found that Allgood’s accident did not occur upon the leased premises but elsewhere upon the tract because the stairway was on the exterior of the building. Quoting Section
 
 *1166
 
 14(b) of the lease, they also found that the accident was not “ ‘caused by any fire, breakage, leakage, collapse or other event, caused by or resulting from the negligent or intentionally tortious act or omission of [the Fund] or its agents, officers, invitees, visitors or guests’ ” or from the Fund’s breach of any covenant. The arbitrators made the following legal conclusions. The lease provisions had to be read together and consistently with one another if possible. Under the lease the Coblentzes retained control of and had a duty to maintain the exterior of the building, including the stairway, and assumed the risk for any injuries occurring there. The Fund did not have and never assumed any duty to maintain the stairway. The Fund’s obligation to obtain insurance coverage naming the Coblentzes as insureds extended only to the Fund’s use of the premises, and the Fund had no obligation to insure the Coblentzes against the liability for injury occurring in areas remaining in the control of the Coblentzes. The Fund had no duty “to indemnify the Coblentzes for personal injuries allegedly caused by negligent maintenance” on the stairway or to assume their defense in this case.
 

 The Fund moved to confirm the arbitration award on March 16, 1994. At the same time, it moved to recalendar its motion for summary judgment against Allgood, earlier denied, and moved to dismiss the Coblentzes’ cross-claim. The Coblentzes opposed these motions on March 21. They stated that they wished to proceed to trial because they believed the arbitrators had erred. They moved to vacate the award on March 24.
 

 The district court confirmed the arbitration award on March 31, 1994. It concluded that the Coblentzes were bound by the arbitrators’ decision even if it was erroneous, but that it was not erroneous. The court found that the Coblentzes had a duty to maintain the staircase and assumed the risk for any injuries occurring there. It stated that the Fund “owed no duty to the plaintiff, and is not responsible to indemnify or otherwise respond to any judgment against the Coblentzes. Any relitigation of [the Fund’s] liability in this case is res judicata.” The court did not address the insurance issue.
 

 On May 17, 1994, the district court granted summary judgment in favor of the Fund against Allgood and dismissed the Coblentzes’ cross-claim against the Fund. It found that the Coblentzes controlled the stairway, that the Fund did not occupy the premises on the date of Allgood’s accident, and that neither the Fund nor the sublessee ABPA created the condition which allegedly caused the accident. It concluded that because the Fund had no control of the stairway it could have no liability to Allgood.
 

 
 *1167
 

 DISCUSSION
 

 The district court looked beyond the pleadings, most obviously to the arbitration award, in granting the Fund’s motion to dismiss the Coblentzes’ cross-claim. “If. . . matters outside the pleading are presented to and not excluded by the court, [a motion to dismiss under NRCP 12(b)(5)] shall be treated as one for summary judgment and disposed of as provided in Rule 56.” NRCP 12(b). When a district court errs “in failing to expressly consider respondent’s motion as one for summary judgment,” this court is not required to reverse, but “simply review[s] the dismissal order as if it were a summary judgment.” Thompson v. City of North Las Vegas, 108 Nev. 435, 438-39, 833 P.2d 1132, 1134 (1992).
 

 A district court shall grant summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” NRCP 56(c). “A litigant has the right to trial whenever the slightest doubt as to remaining issues of fact exists.” Roy v. Lancaster, 107 Nev. 460, 462, 814 P.2d 75, 76 (1991).
 

 I.
 
 Whether the district court erred in dismissing the Coblentzes ’ cross-claim.
 

 The arbitration award
 

 The arbitrators concluded that the Fund had not breached its duty to name the Coblentzes as insureds on its liability insurance policy because this duty extended only to the Fund’s “use of the Premises” and did not extend to injury occurring in areas remaining in the Coblentzes’ control, such as the stairway. This conclusion was clearly erroneous. Section 11(b) of the lease agreement required the Fund to maintain liability insurance, naming the Coblentzes as insureds, for injury or damage “in or upon the Premises
 
 or the remainder of the Property,
 
 and arising out of the use of
 
 all or any portion of the same
 
 by the Tenant or its agents, employees, officers, invitees, visitors and guests.” (Emphasis added.) The fact that the injury occurred on the stairway did not remove it from the insurance coverage called for by the lease.
 

 The arbitrators did not expressly consider whether the injury arose out of a use covered by this provision of the lease, i.e., whether the use was that of an agent, employee, officer, invitee,
 
 *1168
 
 visitor, or guest of the Fund. It clearly was. The injury arose out of the use of the property by ABPA, Allgood’s employer. ABPA was an invitee and agent of the Fund because it subleased the space from the Fund and contracted to perform services for the Fund.
 
 See
 
 Stanley v. Town Square Co-Op., 512 N.W.2d 51, 54 (Mich. Ct. App. 1993) (“tenants are invitees of the landlord while in the common areas, because the landlord has received a pecuniary benefit for licensing their presence”); Hartford Cas. Ins. v. Walker County Agency, 808 S.W.2d 681, 687 (Tex. Ct. App. 1991) (an agent is one authorized by another to transact business or manage some affair for the other). The Fund’s assertion that ABPA was an independent contractor does not mean that ABPA was not the Fund’s agent. Dempster Bros., Inc. v. United States Fidelity & Guar. Co., 388 S.W.2d 153, 156 (Tenn. Ct. App. 1965) (the term “agent” is not inconsistent with the term “independent contractor”; “independent contractor” contrasts with “servant,” and both are agents of their principal).
 

 In limiting the Fund’s duty to provide insurance, the arbitrators referred to Section 14(b) of the lease agreement, which requires the Fund to “indemnify and hold harmless” the Coblentzes for liability “caused by any fire, breakage, leakage, collapse or other event, caused by or resulting from the negligent or intentionally tortious act or omission of the Tenant or its agents, officers, invitees, visitors or guests, or from the Tenant’s breach of any covenant herein.” The record supports the arbitrators’ finding that Allgood’s accident was not due to any misconduct by the Fund or its agents or invitees. However, the arbitrators erred in assuming that because of this, the duty to provide insurance did not apply. The lease agreement sets out the two duties — to insure and to indemnify — as distinct obligations. “[Cjontracting parties may agree that one will indemnify the other for loss from certain risks or they may agree to shift the risk of loss to a liability insurance company.” Bovis v. 7-Eleven, Inc., 505 So. 2d 661, 664 (Fla. Dist. Ct. App. 1987). Here, the Fund’s duty to insure was defined separately from its duty to indemnify; the first was not limited to liability caused by misconduct by the Fund. Breach of a covenant to provide liability insurance is actionable. Schier v. Hertz Corp., 99 Nev. 474, 476, 663 P.2d 1185, 1186 (1983).
 

 We conclude that the arbitrators erred as a matter of law in not recognizing that the Fund had violated its duty to insure,
 
 [1]
 
 which
 
 *1169
 
 was obvious in the contract and distinct from its duty to indemnify.
 

 The district court’s action
 

 The district court nevertheless confirmed the arbitrators’ decision. It stated that parties who have agreed to arbitration “are deemed to have consented to the arbitrator’s decision, even if the decision is erroneous.” As authority for this proposition, the court cited Northwestern Sec. Ins. Co. v. Clark, 84 Nev. 716, 721, 448 P.2d 39, 42 (1968). In
 
 Northwestern,
 
 this court held that a party to arbitration that failed to submit a question of law to the court, as allowed by NRS 38.140, was bound by the arbitrator’s decision on the question.
 
 Id.
 
 However, the Legislature repealed NRS 38.140 in 1969. 1969 Nev. Stat., ch. 456, § 22 at 799. The law in effect when the Coblentzes challenged the arbitrators’ decision expressly provided that after an arbitration award has been made, “either party to the action may request a trial on any or all issues arising out of the action.” NRS 38.109.
 
 [2]
 

 This court may vacate an arbitration award when an arbitrator manifestly disregards the law. Wichinsky v. Mosa, 109 Nev. 84, 89-90, 847 P.2d 727, 731 (1993). The law in regard to interpretation of contracts, such as the lease agreement in this case, is clear. “We should not interpret the contract so as to render its provisions meaningless. If at all possible, we should give effect to every word in the contract.” Caldwell v. Consolidated Realty, 99 Nev. 635, 639, 668 P.2d 284, 287 (citation omitted).
 

 The arbitrators’ conclusion that the Fund had no duty to name the Coblentzes on its insurance policy rendered one of the lease agreement’s provisions meaningless and without effect and thus constitutes a manifest disregard of the law. The district court therefore erred in dismissing the Coblentzes’ cross-claim.
 

 II.
 
 Whether the district court erred in granting summary judgment against Allgood.
 

 It appears that the district court confused the issue of the Fund’s potential liability to its codefendants, the Coblentzes, with the Fund’s potential liability to the plaintiff, Allgood. The
 
 *1170
 
 arbitrators never ruled on the issue of the Fund’s liability to Allgood. Nor did they have the power to do so since Allgood was not a party to the arbitration and the issue was not submitted for arbitration. The arbitrators decided that the Fund had no liability to the Coblentzes. However, in confirming the award, the district court further concluded that the Fund owed no duty to Allgood as well.
 

 In reaching their decisions, the arbitrators and the district court relied on Durm v. Heck’s, Inc., 401 S.E.2d 908 (W. Va. 1991). In that case, a customer exited a grocery store and slipped and fell on a sidewalk outside the store. The court held that
 

 where a lease agreement clearly sets forth that the Lessor has the duty to maintain the non-leased common areas, thereby retaining the lessor’s control over such areas, the lessee of a store located in a shopping center is not liable when a patron sustains injuries as a result of an accident which occurs on the non-leased common area.
 

 Id.
 
 at 911. The district court cited
 
 Durm
 
 in ruling that because the Fund did not control the stairway, the Fund owed no duty to Allgood. This ruling is error under Nevada law.
 

 This court has concluded that
 

 all persons
 
 in this society have an obligation to act reasonably and that an owner or occupier of land should be held to the general duty of reasonable care when another is injured on that land. While a reasonable person would take greater precautions to protect from harm’s way one invited onto his or her premises than he or she would to protect a trespasser, the status of the injured party may not be the dispositive factor. Rather, determinations of liability should primarily depend upon whether the owner or occupier of land acted reasonably under the circumstances.
 

 Moody v. Manny’s Auto Repair, 110 Nev. 320, 333, 871 P.2d 935, 943 (1994) (emphasis added).
 

 We hold that just as technical distinctions between trespasser, invitee, and licensee do not determine an owner’s or occupier’s duty of reasonable care, distinctions between common areas and leased premises or between control and noncontrol of areas do not determine the duty of lessors and lessees to act reasonably towards third persons. Any agreement between the Fund and the Coblentzes regarding maintenance of the stairway leading to the leased premises does not preclude Allgood from asserting that either or both the lessor and the lessee breached their duties of care toward her. Because the Fund was a lessee which did not
 
 *1171
 
 directly occupy the leased premises, proof of unreasonable action or omission on its part might be difficult to prove factually, but it would not be a legal impossibility.
 

 Other courts have recognized that a landlord’s obligations do not eliminate a tenant’s duty of reasonable care to third persons. “[W]hile a reservation of control will subject a landlord to liability, the tenant is not thereby automatically relieved of duty or liability to his invitees if that tenant is aware of the unsafe condition.” Hopkins v. F.W. Woolworth Co., 419 N.E.2d 302, 303 (Mass. App. Ct. 1981).
 

 The effect of a covenant to maintain is only to allocate costs between the tenant and the property owner. . . . [I]f a landlord negligently fails to make repairs required by the covenant and his tenant is consequently subjected to tort liability, the tenant may impose the consequences of that liability upon the landlord by crossclaim in the tort action or otherwise. . . . [HJowever, the covenant absolves neither landlord nor tenant from liability to innocent third parties.
 

 Jackson v. K-Mart Corp., 442 A.2d 1087, 1091 (N.J. Super. Ct. Law Div. 1981) (citations omitted);
 
 see also
 
 Bovis v. 7-Eleven, Inc., 505 So. 2d 661, 664 (Fla. Dist. Ct. App. 1987) (regardless of lessor’s contractual obligations, lessee, as possessor of premises, has independent duty founded in tort law to prevent injury to invitees and licensees).
 

 Thus, the district erred in ruling that the lease agreement between the Fund and the Coblentzes absolved the Fund of any duty to act reasonably toward users of the stairway. Nevertheless, we conclude that summary judgment against Allgood was proper because Allgood failed to offer evidence that the Fund had breached its duty of reasonable care.
 

 In order to avoid summary judgment, Allgood was required to offer admissible evidence that the Fund either caused, knew of, or should have known of the alleged dangerous condition of the stairway.
 
 Cf.
 
 Sprague v. Lucky Stores, Inc., 109 Nev. 247, 250, 849 P.2d 320, 322-23 (1993) (where foreign substance causing patron to slip and fall results from actions of persons other than business or its employees, business is liable only if it had actual or constructive notice of condition and failed to remedy it). Appellants do not cite to the record for evidence of the Fund’s responsibility for or knowledge of the unsafe condition. Allgood filed an affidavit with the district court in which she stated that she believed that the Coblentzes and the Fund had been told of two prior falls on the stairs. She also filed a supplemental affidavit, stating that many women in ABPA’s office were required to
 
 *1172
 
 wear high heels and that she was informed and believed that the Fund was aware that women at the office typically wore high heels. We conclude that this was insufficient evidence that the Fund knew of the alleged dangerous condition that caused Allgood’s fall and injuries.
 

 Furthermore, Allgood’s belief as to the Fund’s knowledge is not the type of evidence necessary to defeat a motion for summary judgment. Affidavits supporting or opposing a motion for summary judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” NRCP 56(e).
 

 Therefore, summary judgment for the Fund against Allgood was justified.
 

 CONCLUSION
 

 The arbitrators erred in ruling that the Fund had no liability to the Coblentzes under the lease agreement. Although the Fund was not obligated to indemnify the Coblentzes in regard to the accident in this case, the Fund breached its duty under the lease agreement to name them as insureds on its liability insurance policy. The district court therefore erred in confirming the arbitration award and dismissing the Coblentzes’ cross-claim against the Fund.
 

 Although we conclude that the Fund owed Allgood a duty of reasonable care, Allgood failed to provide evidence that the Fund breached this duty. Summary judgment against Allgood was thus proper.
 

 We therefore affirm the summary judgment against Allgood and reverse the dismissal of the Coblentzes’ cross-claim and remand for further proceedings consistent with this opinion.
 

 [1]
 

 The Fund’s counsel argued before this court that the Fund was unable to obtain the kind of insurance required by Section 11(b) of the lease agreement. If this was the case, the Fund was obligated to inform the Coblentzes so that they could take other appropriate action.
 

 [2]
 

 The Legislature repealed NRS 38.109 and made other changes to the Uniform Arbitration Act last session. 1995 Nev. Stat., ch. 660, § 4 at 2538.